IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BRANDON ROBERTS,                 *

                Plaintiff,         *

              v.                        *    CIVIL ACTION NO. AW-09-1385

KEITH DURST, et al.,              *

               Defendants.     *
                                                  *****

## **MEMORANDUM OPINION**

Plaintiff filed this civil rights action on May 27, 2009, seeking injunctive relief and damages and alleging that he received false infractions on June 26, 2008 and July 6, 2008 at the North Branch Correctional Institution ("NBCI"). He also states that the adjustment hearings held as a result of the infractions deprived him of due process. Plaintiff further alleges that on July 5, 2008, he was subjected to excessive force during an incident in the dining hall and thereafter was denied medical care.

On October 7, 2009, Defendants[1] filed a motion to dismiss, or in the alternative, motion for summary judgment. Paper No. 13. Plaintiff has filed a response.[2] Paper No. 34. Defendants' motion shall be granted without oral argument. *See* Local Rule 105.6. (D. Md. 2010).

### 1. Factual Background

On June 25, 2008, Officer Durst was assigned to observe physical examinations given to inmates assigned to food services. Plaintiff was asked to undergo a physical and declined. Paper

---

[1] The motion has not been filed on behalf of Adjustment Hearing Officer Fred Nastri as Nastri has not requested representation from the Office of the Attorney General. Paper No. 13. For the reasons that follow, Plaintiff's complaint against Nastri does not state a cognizable claim and shall be dismissed.

[2] Plaintiff has also filed a Motion to Strike Defendants' Lengthy Exhibits. Paper No. 33. The motion shall be denied.

No. 13, Ex. 1.  Plaintiff maintains that although he was not required to have a physical as he was no longer assigned to food services, he submitted to the physical, and then refused to sign the medical form.  Paper Nos. 1 and 34, Exhibit A.  Plaintiff was written an infraction.  He was offered an informal disposition, i.e. five days cell restriction, which he refused.  The matter was referred for a formal hearing.  Paper No. 13, Ex. 1.  Plaintiff claims that the infraction was false and was written in retaliation for his having exercised his right to decline to sign the medical form. Paper No. 1.

On July 5, 2008, Officer Farris was assigned to observe the "chow lines" in the dining hall.  Farris observed Plaintiff get up from his seat on two occasions during the meal.  Paper No. 13, Ex. 1. Plaintiff states that he was given the wrong food tray and returned it to the food slot, then, after returning to his table, he noticed that he had not been provided utensils, and returned to the food slot to get a spoon.  *Id.*  An officer approached Plaintiff and asked to see his identification.  Plaintiff complied and the officer reviewed the identification and returned it to Plaintiff.  *Id*. When Plaintiff exited the dining area Farris pulled Plaintiff aside for a "pat down" search and told Plaintiff he was not to leave his seat in the dining area without permission. Paper No. 13, Ex. 1.

Plaintiff states that Farris "attempted to engage in an argument with [Plaintiff] over a cup of soda [Plaintiff] left at the table with a fellow prisoner." Paper No. 1.  Farris avers that Plaintiff said to him, "Are you looking for trouble?  You better check my rap sheet before you pull me ups," and "I will do what I has to do, no matter what it takes.  You white motherfuckers can't intimidate me."  Farris completed the pat down.  Paper No. 13. Ex. 1.  Plaintiff claims he attempted to leave but was "threatened by Farris and several other officers that he would be taken down if he [didn't] cooperate by answering." Paper No. 1.  Farris then handcuffed

2

Plaintiff, escorted him to Housing Unit 2, and placed him in a holding cell. Plaintiff was placed on administrative segregation. Paper No. 13, Ex. 1. Plaintiff maintains that Farris twisted his wrist with the intent to cause him harm. Plaintiff states that when placed in the holding cell he was directed by Farris and Officer Smith to put his arm out of the slot so that his handcuffs could be removed. When Plaintiff advised Smith he was unable to comply because of the positioning of the handcuffs, Smith reached into the cell and "snatched [Plaintiff's] arms through the slot." Farris and Smith then held, bent and twisted Plaintiff's arms out of the slot causing pain, damage and bruising to the wrist and skin. Plaintiff claims Farris and Smith intentionally closed the slot on Plaintiff's arms, causing scrapes. Paper No. 1. Plaintiff received an infraction that was referred for a formal hearing. Plaintiff refused to sign the notice of infraction. Paper No. 13, Ex. 1.

On July 10, 2008, an adjustment hearing was held as to both infractions. *Id*. The hearing officer found Plaintiff waived his right to representation and his right to witnesses. *Id*. Plaintiff claims he was denied his right to request evidence or call witnesses.[3] Paper Nos. 1 and 34. As to the July 5, 2008 incident, the hearing officer found that service of the infraction notice was properly performed by staff. Plaintiff was found not guilty of creating a disturbance and found guilty of attempting to intimidate and threaten staff in the performance of their duties during mass movement, for which he received 250 days of disciplinary segregation and a loss of visits for 100 days. *Id*. As to the June 25, 2008 incident, Plaintiff was found guilty of disobeying a direct lawful order and of refusing to carry out or accept any institutional housing assignment. He received 90 days of disciplinary segregation and 10 days cell restriction for each offense with

---

[3] Plaintiff's own evidence demonstrates that he did not forward his request for evidence or witnesses on the forms provided or to the hearing officer directly. It appears, however, that his requests, made through informal means, were timely forwarded on his behalf to the hearing officer. Paper No. 34, Ex. B-D.

the sentences to run consecutively. The hearing officer's decision and sanctions were affirmed by the Warden, and Plaintiff was advised of the decision. *Id.*

On July 15, 2008, Plaintiff filed a Request for Administrative Remedy claiming that he was receiving medication for his right wrist as a result of an alleged assault by correctional officers on July 5, 2008, and requesting damages. *Id.*, Ex. 2. Plaintiff's initial ARP and appeal were dismissed as untimely. *Id.* Plaintiff's grievance with the Inmate Grievance Office was likewise dismissed. *Id.* Ex. 3.

## 2. Standard of review

Fed. R. Civ. P. 56(c) provides that:

[Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.,* 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility."

*Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

### 3. Analysis

**A.     Respondeat Superior**

Plaintiff's allegations against Warden Rowley are based solely upon the doctrine of *respondeat superior*, which does not apply in §1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983); *see also Trulock v. Freeh*, 275 F. 3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit). Liability of supervisory officials must be "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001), *citing Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984). Supervisory liability under §1983 must be supported with evidence that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff, (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994). Plaintiff has pointed to no

5

action or inaction on the part of Nero or Butler that resulted in a constitutional injury and his claims against them shall be dismissed.

**B**     **Harassment/Retaliation**

Plaintiff baldly alleges that he has suffered harassment and retaliation. Verbal abuse of inmates by guards, without more, states no claim of assault. *See Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979); *Morrison v. Martin*, 755 F. Supp. 683, 687 (E.D. N.C. 1990). To the extent that Plaintiff contends that Defendants' statements somehow placed him in danger, he has not alleged an adequate injury to state a claim. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (serious injury required in order to state a failure to protect claim); *see also Siegert v. Gilley*, 500 U.S. 226, 234-35 (1991).

Generally, claims of retaliation are to be treated with skepticism. *See Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). In order to sustain a claim based on retaliation, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (emphasis supplied). Plaintiff's claim that he was placed in the holding cell after he threatened to sue if he was assaulted by correctional officers (Paper Nos. 1 and 34), i.e. that retaliatory acts were taken in an effort to deny him access to the courts, fails, as he has not shown the requisite adversity essential to any retaliation claim. *See ACLU of Maryland*, 999 F.2d 780, 785 (4th Cir. 1993); *Scott v. Kelly*, 107 F.Supp 2d 706, 709 (E.D.Va. 2000).

**C.**     **Due Process**

In prison disciplinary proceedings where a prisoner faces the possible loss of good conduct credits, he is entitled to certain due process protections. *See Wolff v. McDonnell*, 418

U.S. 539, 564 (1974). These include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. *Wolff*, 418 U. S. at 564-571. Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445, 455 (1985). The record reflects that Plaintiff did not lose any good conduct credits as a result of the disciplinary proceeding. He therefore received all process that he was due. Accordingly, Plaintiff's claim against Hearing Officer Nastri is subject to dismissal.

**D.** **Excessive Force**

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). This Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers*, 475 U. S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. *See Wilkens v. Gaddy*, 559 U.S. \_\_, Slip Op. No. 08-10914 (Feb. 22, 2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. *Id*. As the Court noted in *Wilkens*, the issue is the nature of the force, not the extent of injury.

7

The uncontroverted records reveal that while Plaintiff was subjected to a routine inquiry in the chow hall regarding his behavior and a routine request for a pat down search, he became verbally combative with staff. The confrontation between Plaintiff and correctional officers occurred in the presence of other inmates during mass movement. As a result of Plaintiff's combative attitude he was handcuffed and escorted to a holding cell. Plaintiff maintains that Defendants intentionally over-tightened the handcuffs, twisted his wrists, and pulled his arms through the cell feed slot. Plaintiff does not dispute that he refused to comply with Defendants' request to put his arms through the slot when returned to the cell. Defendants aver that they did not use excessive force against Plaintiff and that his escort from the chow hall to the holding cell was without incident.

The uncontroverted records demonstrate that Plaintiff filed a sick call slip on July 5, 2008 complaining of injury to his right hand as a result of officers tightening handcuffs. Three days later, on July 8, 2008, Plaintiff was seen by medical staff and failed to mention any injury to his wrists, arms or hands. Rather, Plaintiff reported he fell two days earlier, injuring his left knee, and was provided ice to apply to the knee. *Id.*, Ex. 6. Plaintiff was again seen in the medical department on July 22, 2008, for follow- up care for a back ulcer and evaluation of his complaint of right wrist pain. *Id.*, p. 4-5. Plaintiff had surgical scars on his right wrist and reported tenderness there. No joint swelling was noted. An assessment of wrist pain and pre-existing neuropathy was noted and Plaintiff was prescribed Ibuprofen. *Id*.

Records of the incident, the hearing officer's findings and the statements made under oath by the officers involved, as well as medical records, are consistent with the Defendants' contention that Plaintiff's injuries were the result of a legitimate handcuffing procedure. In other words, the evidence supports Defendants' claim that the force was applied in a good faith effort

to impose discipline. *See Hudson*, 502 U.S. at 6-8. The only evidence that Defendants exceeded the bounds of "good faith" and acted sadistically and maliciously is Plaintiff's declaration that the officers twisted his arms and wrists and closed the slot on his wrists. It is well established that a plaintiff's self-serving affidavit is not sufficient to withstand summary judgment. *See, e.g. National Enters. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000). Accordingly, each remaining Defendant is entitled to summary judgment.

**E.      Medical Care**

To the extent Plaintiff claims correctional employees denied him access to medical care, his claim is denied. The evidence shows that Plaintiff filed a sick call slip the date of the incident and was seen by medical staff three days later, at which time he made no mention of the injuries he allegedly sustained during his placement in the holding cell, complaining instead of an intervening fall. Correctional employees take no part in making medical decisions or judgment regarding inmates; all medical decisions are made by employees of Correctional Medical Services (CMS), the private contractor which provides health care to NBCI inmates. Moreover, correctional employees are permitted to rely on the professional judgment of health care providers employed to care for inmates. *See Miltier v. Beorn*, 896 F.2d 848, 854-55 (4th Cir. 1990). As it does not appear that the named correctional employees affirmatively prevented Plaintiff from receiving medical care, in any way interfered with Plaintiff's medical treatment, or were in any manner deliberately indifferent to Plaintiff's medical needs, their dispositive motion shall be granted as to his claim.

## 4. Conclusion

In light of the foregoing Defendants' Motion for Summary Judgment shall be granted. A separate Order follows.

Date: September 15, 2010

                                                _____/s/_____
                                                 Alexander Williams, Jr.
                                                 United States District Judge